UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| WELL CARE PHARMACY II, LLC, a Nevada corporation, <br><br>    Plaintiff, <br><br> vs. <br><br>W' CARE, LLC *doing business as* W' CARE PHARAMACY, JOHN I. OKOYE, an individual, AHUNNA C. OKOYE, an individual, <br><br>    Defendants. | Case No.: 2:13-cv-00540-GMN-VCF <br><br>**ORDER** |

Pending before the Court is the Motion for Preliminary Injunction (ECF No. 6, 7) filed by Plaintiff Well Care Pharmacy II, LLC ("Plaintiff"). Defendants W' Care, LLC, John I. Okoye, and Ahunna C. Okoye (collectively, "Defendants") filed a Response (ECF No. 18) and Plaintiff filed a Reply (ECF No. 23.)

**I. BACKGROUND**

This case arises from two parties' usage of two similar terms in relation to their separate pharmacy businesses in the Las Vegas area (the "Trade Area"). Specifically, beginning in 2007, Plaintiff opened its WELLCARE pharmacy. Plaintiff continued using the WELLCARE mark through December 2011. After December 2011, Plaintiff separated the name of its pharmacy into two words, "WELL CARE." Plaintiff currently uses the WELL CARE mark in association with its pharmacy operations. In addition to the words WELL CARE, Plaintiff's mark is always associated with the same bright blue and green color scheme.

Throughout its use of the mark, Plaintiff alleges that it has spent "between $150,000.00-$170,000.00 in advertising and branding throughout the Trade Area." (Mot. for Prelim. Inj. 3:4-

7, ECF No. 7; Casal Decl. ¶¶ 4-8, ECF No. 7-1.)  Plaintiff further asserts that "[a]pproximately $100,000.00 of this amount has been expended on marketing the 'WELL CARE' name and mark since December 2011." (*Id.*)

Defendants John and Ahunna Okoye (the "Okoyes") formed W'CARE LLC in March 2012.  W'CARE LLC is a pharmacy that operates as a Health Mart franchise.  The Okoyes formed W'CARE LLC in March 2012 and signed the franchise agreement with Health Mart in July 2012.  Thereafter, the signs, branding, and marketing for W'CARE Pharmacy included the W'CARE mark that was associated with a bright blue and green color scheme.

Thereafter, in November 2012, Plaintiff became aware of the W'CARE Pharmacy that the Okoyes were operating.  In response, on March 29, 2013, Plaintiff filed the instant action alleging nine causes of action: (1) Trademark Infringement under 15 U.S.C. § 1114; (2) Common Law Trademark Infringement; (3) False Designation of Origin under 15 U.S.C. § 1125(a); (4) Trademark Dilution under 15 U.S.C. § 1125(c); (5) State Law Service Mark and Trade Name Dilution; (6) Unfair Competition, Passing Off; (7) Deceptive Trade Practices under NRS 41.600 and NRS 598.0915; (8) Intentional Interference with Prospective Economic Advantage; and (9) Application for Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction. (Compl. ¶¶ 32-78, ECF No. 1.)  On the same day that Plaintiff filed this action, Plaintiff also filed a Motion for Temporary Restraining Order and Preliminary Injunction. (ECF Nos. 5-7.)

## II.     LEGAL STANDARD

Rule 65(a) of the Federal Rule of Civil Procedure 65 authorizes a court to "issue a preliminary injunction only on notice to the adverse party." Fed. R. Civ. P. 65(a)(1).  A preliminary injunction may be issued if a plaintiff establishes: (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Winter v.*

*Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "Injunctive relief [is] an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id*. at 22.

The Ninth Circuit has held that "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011).

"In deciding a motion for a preliminary injunction, the district court 'is not bound to decide doubtful and difficult questions of law or disputed questions of fact.'" *Int'l. Molders' & Allied Workers' Local Union No. 164 v. Nelson*, 799 F.2d 547, 551 (9th Cir. 1986) (quoting *Dymo Indus., Inc. v. Tapeprinter, Inc.*, 326 F.2d 141, 143 (9th Cir. 1964)).

"The urgency of obtaining a preliminary injunction necessitates a prompt determination and makes it difficult to obtain affidavits from persons who would be competent to testify at trial. The trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial." *Flynt Distrib. Co., Inc. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984) (citing 11 C. Wright and A. Miller, *Federal Practice and Procedure, Civil*, § 2949 at 471 (1973)).

### III. DISCUSSION:  The WELL CARE Mark

#### A. Likelihood of Success on the Merits

To succeed on its unfair competition claim under section 43(a) of the Lanham Act, Plaintiff will have to establish (1) that Plaintiff owns the WELL CARE mark; (2) that the WELL CARE mark is a valid and protectable mark; and (3) that Defendants are using a mark that is confusingly similar to the WELL CARE mark. *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1046 (9th Cir. 1999); see also 15 U.S.C. § 1125(a).

/ / /

### *1.  Plaintiff Owns a Valid, Protectable Mark*

Although Plaintiff has not registered its mark with the United States Patent and Trademark Office, it is well established that section 43(a) of the Lanham Act "protects qualifying unregistered trademarks and that the general principles qualifying a mark for registration under § 2 of the Lanham Act are for the most part applicable in determining whether an unregistered mark is entitled to protection under § 43(a)." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992).  At bottom, "a mark must be capable of distinguishing the applicant's goods from those of others." *Id.* (citing 15 U.S.C. § 1052).

When determining whether a mark is distinctive and, thus protectable, courts generally begin by classifying the relevant mark as either (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful. *Id.* at 768.  Marks that are suggestive, arbitrary, or fanciful are considered inherently distinctive and are entitled to protection. *Id.*  On the opposite end of the spectrum, generic marks are not entitled to protection because "they are common words or phrases that describe a class of goods rather than an individual product," and thus do not exclusively relate to the trademark owner's product.  *Japan Telecom, Inc. v. Japan Telecom Am. Inc.*, 287 F.3d 866, 872 (9th Cir. 2002) (citation and internal quotation marks omitted); *see also Two Pesos*, 505 U.S. at 768 ("[G]eneric  marks—those that refe[r] to the genus of which the particular product is a species—are not registrable as trademarks.")  Descriptive marks, however, are not inherently distinctive and cannot be protected when they are "used to describe a product [and] do not inherently identify a particular source." *Two Pesos*, 505 U.S. at 769.  However, descriptive marks may acquire the requisite distinctiveness if the mark "has become distinctive of the [trademark user's] goods in commerce." *Id.* (citing 15 U.S.C. §§ 1052(e), (f)).  This acquired distinctiveness is known as "secondary meaning." *Id.*  Accordingly, to establish that the mark is capable of being protected, Plaintiff must first establish that the mark is "either (1) inherently distinctive or (2) has acquired distinctiveness through secondary meaning." *Two*

*Pesos*, 505 U.S. at 769 (emphasis omitted).

In this case, Plaintiff asserts that its WELL CARE mark is suggestive and thus, inherently distinctive. Alternatively, Plaintiff argues that the WELL CARE mark is descriptive and has acquired the requisite distinctiveness through secondary meaning. Defendants, on the other hand, contend that the WELL CARE mark is not protectable because it is descriptive and lacks the requisite secondary meaning. To determine whether Plaintiff will likely succeed in establishing that the WELL CARE mark is a protectable mark, the Court looks to "the imaginativeness involved in the suggestion, that is, how immediate and direct is the thought process from the mark to the particular product. If the mental leap between the word and the product's attribute is not almost instantaneous, this strongly indicates suggestiveness, not direct descriptiveness." *Japan Telecom*, 287 F.3d at 873 (citation omitted).

*a. Plaintiff will likely succeed in showing that its Mark is suggestive*

The Court first notes that the WELL CARE mark appears to be a suggestive mark and, thus, is inherently distinctive. Suggestive marks "subtly connote[] something about the product" *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 349 (9th Cir. 1979) in a way that requires a consumer to "use imagination or any type of multistage reasoning to understand the mark's significance," *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1142 (9th Cir. 2002).

In this case, the WELL CARE mark appears to be suggestive, rather than merely descriptive, because "a consumer must use more than a small amount of imagination to make the association." *Rodeo Collection, Ltd. v. W. Seventh*, 812 F.2d 1215, 1218 (9th Cir. 1987). The Court agrees with Plaintiff's assertion that "[a]lthough 'WELL CARE' may denote a connection to the health care field, it does not readily identify itself with the provision of pharmacy services." (Reply 6:19-22, ECF No. 23.) Specifically, "well care" would be more descriptive of a hospital that provides care in order for the patients to get well. In contrast, when "well care" refers to a pharmacy, this is merely a term that suggests an affiliation with the health care

industry generally.

> *b. Alternatively, Plaintiff will likely succeed in establishing that its Mark is descriptive and has acquired secondary meaning*

Even if the Court were to agree with Defendant that the WELL CARE mark is descriptive, the Court finds that Plaintiff has carried its burden of establishing that it will likely succeed in proving that the Mark has acquired secondary meaning. "In order to obtain protection for its trade name, plaintiff 'must show that the primary significance of the term in the minds of the consuming public is not the product but the producers.'" *Am. Scientific Chem., Inc. v. Am. Hosp. Supply Corp.*, 690 F.2d 791, 792 (9th Cir. 1982) (quoting *Kellogg Co. v. Nat'l Biscuit Co.*, 305 U.S. 111, 118 (1938)). When determining whether a descriptive mark has acquired secondary meaning, courts consider:

> (1) whether actual purchase[r]s of the product bearing the claimed trademark associate the trademark with the producer, (2) the degree and manner of advertising under the claimed trademark, (3) the length and manner of use of the claimed trademark and, (4) whether use of the claimed trademark has been exclusive.

*Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1358 (9th Cir. 1985) (citations omitted).

In this case, Plaintiff has carried its burden through the consistent and exclusive use of the mark for over five years. Defendants argue that multiple businesses in Southern Nevada use derivatives of the WELL CARE mark and that this fact bars a finding of a secondary meaning. However, Defendants have failed to establish that any such business operates a pharmacy within the Trade Area. The mere fact that Plaintiff altered its name from "Wellcare" to "WELL CARE" in December 2011 does not alter this conclusion.

In addition to Plaintiff's consistent and exclusive use of the WELL CARE mark, Plaintiff has spent significant amounts of money on widespread advertising within the Trade Area. (*See* Mot. for Prelim. Inj. Ex. 2, ECF No. 7-2; Reply 11:11-12:20, ECF No. 23.) Finally, Plaintiff has

provided sufficient evidence for this stage of the litigation to establish that its customers associate the WELL CARE mark with Plaintiff's pharmacy locations and services.

For the reasons discussed above, the Court concludes that Plaintiff has carried its burden of establishing that it will likely succeed in proving that the WELL CARE mark is a protectable mark.

### 2. *Likelihood of Confusion*[1]

Likelihood of confusion exists whenever "consumers are likely to assume that a product or service is associated with a source other than its actual source because of similarities between the two sources' marks or marketing techniques." *Nutri/System, Inc. v. Con-Stan Indus., Inc.*, 809 F.2d 601, 605 (9th Cir. 1987). In determining the likelihood of consumer confusions, courts rely on the eight *Sleekcraft* factors:

> (1) the similarity of the marks; (2) the relatedness of the two companies' services; (3) the marketing channel used; (4) the strength of [the] mark; (5) [the Defendant's] intent in selecting its mark; (6) evidence of actual confusion; (7) the likelihood of expansion into other markets; and (8) the degree of care likely to be exercised by purchasers.

*AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979).

As discussed below, the Court finds that each of the eight *Sleekcraft* factors either favors Plaintiff or is neutral. After balancing the eight *Sleekcraft* factors, the Court finds that Plaintiff will likely succeed in demonstrating a likelihood of consumer confusion between its WELL CARE mark and Defendants' W'CARE mark.

---

[1] Numerous decisions from the Ninth Circuit and the district courts within indicate that, at the preliminary injunction stage, a district court need only consider whether the plaintiff is likely to succeed in establishing likelihood of confusion. For example, the Ninth Circuit stated in *GoTo.com, Inc. v. Walt Disney Co.*, that "'because we are at the preliminary injunction stage, [plaintiff] must establish that it is likely to be able to show such a likelihood of confusion.'" 202 F.3d 1199, 1205 (9th Cir. 2000) (quoting *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1052 n.15 (9th Cir. 1999)); *see also Aurora World, Inc. v. Ty Inc.*, 719 F. Supp. 2d 1115, 1156 (noting that, because the record at the preliminary injunction stage generally will not be sufficient to permit thorough review, a plaintiff need only establish that it is likely to succeed in establishing likelihood of confusion).

*a. Similarity of the Marks*

"The first *Sleekcraft* factor—the similarity of the marks—has always been considered a critical question in the likelihood-of-confusion analysis." *GoTo.com v. Walt Disney Co.*, 202 F.3d 1199, 1205 (9th Cir. 2000). "[T]he more similar the marks in terms of appearance, sound, and meaning, the greater the likelihood of confusion." *Brookfield Commc'ns*, 174 F.3d at 1054. When comparing the two marks, courts follow three guiding principles: (1) "the marks must be considered in their entirety and as they appear in the marketplace"; (2) "similarity is adjudged in terms of appearance, sound, and meaning"; and (3) "similarities are weighed more heavily than differences." *GoTo.com*, 202 F.3d at 1206 (citations omitted).

In this case, when viewed in their entirety, the similarities between the marks are striking. First, the marks are similar in "sight." First, Defendants' mark consists of the same letters in the same order, with the exception of "ell" of "Well." In addition, both marks employ similar looking words and a blue and green color scheme. Although this color scheme is not protectable and, thus, not enjoined, it does add to the similar appearance of the marks.

Additionally, the marks are similar in "sound" and "meaning." In fact, the names appear to be derivatives of one another. To convert Plaintiff's WELL CARE mark into Defendants' mark, one need only remove "ELL" from Plaintiff's WELL CARE mark and add an apostrophe. Essentially, Defendants' mark is the contraction form of Plaintiff's mark; Defendant has created a shortened form of two words by using an apostrophe. Furthermore, as noted above, the term "WELL CARE" is intended to suggest a connection with the health care field. Presumably, the contraction form of this mark "W'CARE" is similarly intended to suggest a connection with the health care field.

Thus, for these reasons, the Court finds that the overwhelming similarity of the marks favors a finding that Plaintiff will likely succeed in establishing the likelihood of confusion element of its unfair competition claim.

### b. The Relatedness of the Two Companies' Services

"The standard for deciding whether the parties' goods or services are 'related' is whether customers are 'likely to associate' the two product lines." *Surfvivor Media, Inc. v. Survivors Prods.*, 406 F.3d 625, 633 (9th Cir. 2005) (citation omitted). To that end, courts also "consider whether the buying public could reasonably conclude that the products came from the same source." *Id.*

In this case, neither party disputes that both Plaintiff and Defendants are engaged in retail pharmacies operating in Las Vegas, Nevada. However, Defendants argue that "the law recognizes that for small, local businesses with a small territory of goodwill, two businesses may operate even in the same city with the same mark without causing a likelihood of confusion." (Resp. 17:9-11, ECF No. 18.) Defendants' argument is not persuasive. First, Defendants failed to support this assertion with controlling authority. More importantly, Defendants have failed to recognize that Plaintiff has multiple locations throughout Las Vegas. Therefore, Defendants are likely infringing upon Plaintiff's "territory of goodwill."

For these reasons, the Court finds that this factor favors a finding that Plaintiff will likely succeed in establishing the likelihood of confusion element of its unfair competition claim.

### c. The Marketing Channel Used

The Court need not analyze this factor in depth because Defendant concedes that this factor favors a finding that Plaintiff will likely succeed in demonstrating the likelihood of confusion element of its unfair competition claim.

### d. Strength of the Mark

"The more likely a mark is to be remembered and associated in the public mind with the mark's owner, the greater protection the mark is accorded by trademark laws." *GoTo.com*, 202 F.3d at 1207 (citation omitted). "This 'strength' of the trademark is evaluated in terms of its conceptual strength and commercial strength." *Id.* (citation omitted).

"Marks can be conceptually classified along a spectrum of increasing inherent distinctiveness." *Id.* As discussed above, the WELL CARE mark is distinctive because it is either suggestive and, thus, inherently distinctive or it has acquired the requisite distinction through secondary meaning. However, given that determining whether the WELL CARE mark is suggestive or descriptive is such a close question, it is unlikely that Plaintiff will establish that this is a strong mark. This mark or a derivative thereof is commonly associated with the health care industry. As such, it is more likely that the mark is a weak mark "entitled to a restricted range of protection." *Sleekcraft*, 599 F.2d at 350. Accordingly, "only if the marks are quite similar, and the goods closely related, will infringement be found." *Id.* Nevertheless, the weakness of the WELL CARE mark is of limited importance; "the strength of the mark is of diminished importance in the likelihood of confusion analysis." *GoTo.com*, 202 F.3d at 1208. Given the striking similarity between the two names, the Court finds that this factor slightly favors a finding that Plaintiff will likely succeed in establishing the likelihood of confusion element of its unfair competition claim. [2]

### e. The Defendants' Intent in Selecting Its Mark

The Ninth Circuit has previously "emphasized the minimal importance of the intent factor: 'Importantly, an intent to confuse customers is not required for a finding of trademark infringement.'" *GoTo.com*, 202 F.3d at 1208 (quoting *Brookfield*, 174 F.3d at 1059). Plaintiff first argues that "Defendants consciously and intentionally registered a company name substantially identical to Plaintiff's." (Mot. for Prelim. Inj. 17:9-10, ECF No. 7.) Additionally, Plaintiff contends that Defendants "have repeatedly intentionally misrepresented to the public that W' CARE PHARMACY is the same company as WELL CARE PHARMACY." (*Id.* at

---

[2] Given the Court's findings that the mark is sufficiently conceptually strong, the Court need not address "commercial strength." In addition, the Ninth Circuit has previously stated that district courts need not consider commercial strength at the preliminary injunction stage because it is an evidence-intensive inquiry. *Network Automation, Inc. v. Advanced Sys. Concepts*, 638 F.3d 1137, 1149 (9th Cir. 2011).

1  17:11-13.)  In response, Defendants offer sworn testimony from its principal that he was
2  unaware of Plaintiff's existence at the time he named his pharmacy and that he did not choose
3  this name with the intent to confuse or mislead. (Resp. 21:22-26.)
4        Given that the Court need not resolve disputed questions of fact at the preliminary
5  injunction stage, *Int'l. Molders' & Allied Workers' Local Union No. 164*, 799 F.2d at 551
6  (citation omitted), and that this element is of "minimal importance" to the likelihood of
7  confusion analysis, the Court declines to resolve the question of the Defendants' intent.  For
8  these reasons, the Court finds that this factor favors neither Plaintiff nor Defendants.

      *f.  Evidence of Actual Confusion*

10      "Evidence of actual confusion is strong evidence that future confusion is likely . . .."
11  *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1150 (9th Cir. 2002).  Although "'[e]vidence
12  that the use of the two marks has already led to confusion is persuasive proof that future
13  confusion is likely,' the converse is not true." *GoTo.com*, 202 F.3d at 1208.  In its motion,
14  Plaintiff conveys multiple examples of actual confusion among unnamed "prospective
15  patient[s]/customer[s]." (Mot. for Prelim. Inj. 15:4-21, ECF No. 7.)  Although these anecdotes
16  may constitute some evidence of actual confusion, they are insufficient to support a general
17  likelihood of confusion finding. *See, e.g.*, *Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385,
18  1393 (9th Cir. 1993) (concluding that the trial court correctly found that the plaintiff's "de
19  minimis evidence of actual confusion" was insufficient to support a finding of likelihood of
20  confusion).  For this reason, the Court finds that this factor favors neither Plaintiff nor
21  Defendants.

      *g.  The Likelihood of Expansion Into Other Markets*

23     This factor requires the Court to inquire "whether the parties are likely to compete with a
24  similar product in the same market." *Official Airline Guides*, 6 F.3d at 1394.  However, the
25  Ninth Circuit has repeatedly recognized that "[t]he likelihood of expansion in product lines is

relatively unimportant where two companies already compete to a significant extent." *GoTo.com*, 202 F.3d at 1209 (citing *Brookfield*, 174 F.3d at 1060); *see also Playboy Enters., Inc. v. Netscape Commc'ns Corp.*, 354 F.3d 1020, 1029 ("Because the [defendants'] goods and [plaintiff's] are already related, . . . this factor is irrelevant"). Accordingly, because both parties concede that their goods and services are identical, the Court finds that this factor favors neither Plaintiff nor Defendants.

>    *h.  The Degree of Care Likely to be Exercised by Purchasers*

Consumers exercise greater care when purchasing expensive goods. *Official Airline Guides*, 6 F.3d at 1393 (citation omitted) ("It is assumed that buyers will exercise greater care in their purchases of expensive goods."). In contrast, when purchasing inexpensive products, courts generally assume that consumers will exercise less care. *Brookfield,* 174 F.3d at 1060 ("[W]hen dealing with inexpensive products, customers are likely to exercise less care, thus making confusion more likely."). "Low consumer care, in turn, increases the likelihood of confusion." *Playboy*, 354 F.3d at 1028.

In this case, Plaintiff argues that "both Parties provide pharmacy services to the public, including but not limited to filling patients' prescription medication and selling affordable over-the-counter medication and other health related items. These products are relatively inexpensive, which decreases the amount of care a consumer will likely exercise when making a decision as to the identity of the Parties." (Mot. for Prelim. Inj. 16:23-17:1, ECF No. 7.) Defendants, on the other hand, assert that the increasing prices in prescription drugs warrants an expectation that consumers would exercise "a greater degree of care than consumers of other retail products." (Resp.  21:3-17, ECF No. 18.)  Additionally, Defendants contend that, contrary to Plaintiff's argument, those pharmacy customers that are either elderly or infirm are "typically more discerning, not less." (*Id.*)

The Court finds that neither parties' arguments are particularly compelling.  Furthermore,

both parties lack evidentiary support for their respective positions. Accordingly, the Court finds that this factor favors neither Plaintiff nor Defendants. Furthermore, even to the extent that this factor might favor Defendants, it is insufficient to overcome the other factors that, as discussed above, favor Plaintiff.

### B. Likelihood of Irreparable Harm in the Absence of Preliminary Relief

To prevail on its Motion for Preliminary Injunction, Plaintiff must also establish that it will likely suffer irreparable harm without the issuance of injunctive relief. *Winter*, 555 U.S. at 21. To carry this burden, Plaintiff must "demonstrate a likelihood of irreparable injury—not just a possibility—in order to obtain preliminary relief." *Id.* At bottom, Plaintiff must show that "remedies available at law, such as monetary damages, are inadequate to compensate for th[e] injury." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).[3]

"The Lanham Act provides national protection of trademarks in order to [1] secure to the owner of the mark the goodwill of his business and [2] to protect the ability of consumers to distinguish among competing producers." *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.,* 469 U.S. 189, 198 (1985). Confusion as to the origin of goods that consumers purchase poses a threat to the goodwill and reputation to the original trademark holder.

In this case, as discussed above, the similarities between the marks and the identical

---

[3] Plaintiff asserts that once the Court finds that Plaintiff is likely to succeed on the merits, the Court should presume irreparable harm. True enough, many courts in the past held that once a plaintiff established that it was likely to succeed on the merits, irreparable injury was generally presumed. *See, e.g.*, *El Pollo Loco, Inc. v. Hashim*, 316 F.3d 1032, 1038 (9th Cir. 2003) ("In a trademark infringement claim, irreparable injury may be presumed from a showing of likelihood of success on the merits."). More recently, the Ninth Circuit has held that, after the Supreme Court's decisions in *eBay v. MercExchange, L.L.C.*, 547 U.S. 388 (2006) and in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008), such a presumption is impermissible, at least in the context of copyright claims. *Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 998 (9th Cir. 2011). Whether this presumption has survived in the trademark context, however, is unclear. On at least one occasion after *Winter*, the Ninth Circuit has upheld a district court's application of this presumption of irreparable harm. *See Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 877 (9th Cir. 2009). Because of the uncertain status of this presumption, the Court declines to rely on such a presumption in determining whether Plaintiff will suffer irreparable harm without the requested injunctive relief.

market in which the parties operate will likely result in consumer confusion. Such confusion poses an ongoing risk of irreparable injury to Plaintiff's goodwill and reputation. Accordingly, Plaintiff would likely suffer irreparable reputational injury without the issuance of an injunction that enjoins Defendants from the use of the W'CARE name.

### C. The Balance of Equities

Before issuing a preliminary injunction, courts must weigh "the competing claims of injury and [] consider the effect on each party of the granting or withholding of the requested relief." *Amoco Prod. Co. v. Village of Gambell, AK*, 480 U.S. 531, 542 (1987). As discussed above, Plaintiff will likely suffer irreparable injury for which Plaintiff cannot be adequately compensated with money damages. Defendants, on the other hand, argue that the balance of equities favors Defendants because "'Plaintiff and Defendants have each spent substantial resources developing their marks, but the hardships Plaintiff may suffer if the status quo is maintained are far inferior to those Defendant would endure if it were required to cease further commercial use of its mark . . .'" (Resp. 23:16-20, ECF No. 18 (quoting *Credit One Corp. v. Credit One Fin., Inc.*, 661 F. Supp. 2d 1134, 1141 (C.D. Cal. 2009)).

The Court finds that Defendants' conclusory statements are insufficient to persuade the Court that the balance tips in favor of Defendants. Specifically, Defendants have failed to provide examples of the injuries that they will suffer if the Court were to issue the requested injunction. Nevertheless, the Court does recognize that an injunction would force Defendants to change its name and, correspondingly, some of its branding. That being said, the requested injunction will not preclude Defendants from conducting its normal business activities so long as it is conducting those activities under a name that is not confusingly similar to WELL CARE. For these reasons, the Court concludes that the balance of hardships tips in favor of Plaintiff.

### D. The Public Interest

"The public interest analysis for the issuance of [injunctive relief] requires [district

courts] to consider whether there exists some critical public interest that would be injured by the grant of preliminary relief." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1138 (9th Cir. 2011) (citation omitted). "In the trademark context, courts often define the public interest at stake as the right of the public not to be deceived or confused." *CytoSport v. Vital Pharm., Inc.*, 617 F.Supp.2d 1051, 1081 (E.D. Cal. 2009). Because the Court has determined that the consuming public is likely to be confused between Plaintiff's mark and Defendants' mark, the public interest weighs in favor of issuing the requested injunction.

## IV. SECURITY

Rule 65(c) of the Federal Rules of Civil Procedure requires that "[t]he court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully . . . restrained." Fed. R. Civ. P. 65(c). Thus, the primary purpose of such a bond is to safeguard Defendants from costs and damages incurred as a result of a preliminary injunction improvidently issued.

In this case, Defendants assert that the "requested injunction would require [Defendants] to revise its signage, require it to terminate its relationship with Health Mart, and destroy its good will." (Resp. 26:3-4, Ex. 1 ¶ 18, ECF No. 18.) Ultimately, Defendants contend that the issuance of this injunction will force Defendants out of business. (Resp. 26:3-9, Ex. 1 ¶ 18.) Accordingly, Defendants request that the Court require Plaintiff to post a bond "in an amount of no less than $500,000." (Resp. 26:7-9.)

Defendants fail to provide the Court with evidentiary support sufficient to sustain a finding that this injunction will likely force Defendants to close. Thus, Defendants have failed to demonstrate that a $500,000 bond is warranted. This Order requires only that Defendants cease operating under the name W'CARE. In fact, Defendants are free to continue using the green and blue motif as required by their Health Mart agreement, so long as Defendants cease

operating under the name that is confusingly similar to WELL CARE.  Accordingly, the Court declines to impose a $500,000 bond.  However, the issuance of this injunction will ultimately require that Defendants re-brand its pharmacy with a new name.  Plaintiff concedes that Defendants will need to "replace the sign on the storefront (at a cost of less than $5,000), and obtain a new business license (at a cost of $200)." (Reply 23:15-18 (footnote omitted).)  In addition, Defendants will incur expenditures on advertising and other types of re-branding.

For these reasons, the Court concludes that a $20,000 bond is appropriate in this case.  The Court, therefore, orders that this preliminary injunction shall take effect only upon Plaintiff's posting with the Court a bond in the amount of $20,000.

## V. CONCLUSION

**IT IS HEREBY ORDERED** that the Motion for Preliminary Injunction (ECF No. 6, 7) filed by Plaintiff Well Care Pharmacy II, LLC is **GRANTED**.  Defendants, including without limitation, all of their respective partners, officers, members, agents, servants, employees, and all other persons acting in concert or participation with Defendants, are enjoined, during the pendency of this action, from using the name W'CARE or any name confusingly similar thereto when used in connection with the provision of pharmacy services in the Trade Area.

**IT IS FURTHER ORDERED** that Plaintiff Well Care Pharmacy II, LLC shall post a bond of TWENTY THOUSAND DOLLARS ($20,000.00) in order to recompense Defendants if the Court later determines that Defendants have been wrongfully enjoined.

**IT IS FURTHER ORDERED** that the Motion for Temporary Restraining Order (ECF No. 5) filed by Plaintiff Well Care Pharmacy II, LLC is **DENIED as MOOT**.

**DATED** this 24th day of June, 2013.

_____
Gloria M. Navarro
United States District Judge